IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOSEPH PITTS, #A0259019,       )       CIV. NO. 17-00137 JMS-KSC
                              )
            Plaintiff,        )       ORDER DISMISSING COMPLAINT
                              )       IN PART
      vs.                     )
                              )
SGT. TUITAMA, et al.,         )
                              )
            Defendants.       )
_____       )

## ORDER DISMISSING COMPLAINT IN PART

Before the court is pro se Plaintiff Joseph Pitts's prisoner civil rights

Complaint brought pursuant to 42 U.S.C. § 1983 and state law. ECF No. 1. Pitts

names officials and employees of the Hawaii Department of Public Safety

("DPS"), the Halawa Correctional Facility ("HCF"), and the Hawaii State Hospital

("HSH") as Defendants.[1]  He alleges that HSH Defendants violated his rights by

forcibly medicating him and DPS/HCF Defendants violated his rights by

_____

[1] Pitts names: past and present Hawaii Governors Neil Abercrombie and David Ige; DPS
Director Nolan Espinda, Assistant Director of Corrections Joedie Maesaka-Hirata, Divisions
Administrator Shari Kimoto, and Appeals Branch Administrator Michael J. Hoffman
(collectively, "DPS Defendants"); HCF former Warden Francis Sequiera, Sgt. Tuitama,
Psychiatric Supervisor Gavin Takenaka, Mail Supervisor Terri Yoshinaga, Dallen Paleka, Jeff
Tom, and Sgt. Bruhn (collectively, "HCF Defendants"); HSH Medical Director William
Sheehan, MD, Physician Carla Sheehan, MD, Patient Advisor Catherine Davis, RN Emelda, and
Tony Baker (collectively, "HSH Defendants"); and John and Jane Does 1-20 (representing
unidentified HCF and HSH staff).

instituting an unconstitutional mail policy.  The Complaint is DISMISSED in part with leave to amend as limited below.

## I. **SCREENING**

Because Pitts is a prisoner and is proceeding in forma pauperis, the court must conduct a pre-answer screening of his Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  The court must sua sponte dismiss a prisoner's complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune from suit.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (describing pre-answer screening) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v.*

*Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

Leave to amend should be granted if it appears the plaintiff can correct the complaint's defects. *Lopez*, 203 F.3d at 1130. A court may dismiss a complaint or claim without leave to amend, however, when "it is clear that the complaint could not be saved by any amendment." *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. **PITTS'S ALLEGATIONS**[2]

Pitts alleges two distinct causes of action: the first asserts claims against HSH Defendants that allegedly occurred in June 2015; the second asserts claims against DPS and HCF Defendants at an unidentified time while he was confined at the Halawa Correctional Facility. For clarity, the court refers to Pitts's "Count III," set forth on pages 7-8 of the Complaint, as the "First Cause of Action," and his "Count I," set forth on pages 9-17, as Pitts's "Second Cause of Action."

### A. **First Cause of Action: HSH Defendants**

Pitts's First Cause of Action allegedly occurred while he was committed to the HSH. *See* Compl., ECF No. 1, PageID #7-8 ("Count III"). Pitts alleges that on June 19, 2015, Defendant RN Emelda began yelling that he was only allowed to call his attorney, mother, and patient advisor as Pitts was walking to the telephone. *Id.*, PageID #7. Pitts says he questioned this, but returned to his room when Emelda became agitated.

A short time later, Defendant Baker and five to six unidentified HSH staff ("HSH Does 1-5 ") rushed into Pitts's room and told him to lie face down on the ground. *Id.* Pitts says he questioned this order, but complied without delay. Pitts alleges Baker and HSH Does 1-5 held him, pulled down his pants, injected him

---

[2] These facts are taken from the Complaint and accepted as true but are not findings.

with tranquilizers, and shackled him with leather ankle restraints. *Id.* Baker told Pitts they did so because it had been reported that Pitts was agitated and had intimidated a staff member. *Id.*, PageID #8. Pitts says they left him on the floor as they laughed and congratulated each other. Pitts passed out, and when he awoke, he was nauseated, disoriented, and in pain.

Pitts told HSH Nursing Director Candy, who is not a named Defendant, that the report that he was agitated and had intimidated staff was false. *Id.* Candy allegedly reviewed the June 19, 2015 surveillance video of the incident, and later told Pitts that it confirmed his version of events. She said that "she would take care of it." *Id.*

Pitts says that he immediately filed a grievance arising from the incident, but has received no response. On September 10, 2015, Defendant HSH Medical Director William Sheehan, MD, allegedly told Pitts that HSH had no grievances on file from him regarding the incident.

Pitts says he told his patient advisor, Defendant Catherine Davis, that HSH staff often targeted him because he is African-American and had filed grievances and complaints against HSH staff. He also told Davis that HSH employee Sam, who is not named as a Defendant, had sexually groped him while he was

restrained (on another occasion), and that Baker was known to "target another black female patient." *Id.* Pitts does not state when he spoke with Davis.

Pitts says Defendant Carla Sheehan, MD, "may have ordered the injection." *Id.*

Pitts claims that HSH Defendants' actions constitute excessive force, cruel and unusual punishment, retaliation, denial of due process, assault and battery, negligence, and intentional infliction of emotional distress.

**B.    Second Cause of Action:  HCF and DPS Defendants**

In Pitts's Second Cause of Action, detailing events that allegedly occurred at HCF, Pitts complains that Defendant HCF Mailroom Supervisor Terri Yoshinaga and unidentified HCF mailroom staff purposely mishandled, delayed, opened, and inspected his privileged and personal mail outside of his presence in retaliation for his having filed grievances and complaints and being a jail house lawyer.  Compl., ECF No. 1, PageID #9-17.

Pitts says that his criminal defense attorney, John Schum, mailed a letter that was labeled "confidential" to him on May 8, 2015, and was opened outside of his presence.  *Id.*, PageID #9.  He claims that Yoshinaga and HCF mailroom staff opened, inspected, and read additional mail outside of his presence from Schum, Barry Sooalo, Esq., Lance T. Weber, Esq., the Hawaii Attorney General, "the

courts, [and] the Judge." *Id.*, PageID #10. Pitts claims they refused to mail his confidential letters to the Hawaii State Ombudsman and Hawaii Medical Claims Conciliation Panel ("MCCP") unless he allowed them to inspect these letters. *Id.* Pitts complains that his incoming and outgoing non-privileged mail is delayed, passed around, and read by mailroom personnel and others. *See id.*, PageID #10-14.

Pitts complains that, while DPS provides indigent inmates writing supplies and postage, these supplies are limited to the equivalent of three one-ounce letters per week. *Id.*, PageID #15-16. He says inmates with adequate funds in their accounts are not limited to three letters per week, and alleges that this discriminates against indigent inmates.

Finally, Pitts alleges that, after he filed an "MICP complaint"[3] against Defendant HCF Psychiatric Supervisor Gavin Takenaka and HCF medical staff on September 14, 2015, regarding the conditions of confinement in the HCF mental health unit, Takenaka began writing false reports in October and November 2015, alleging that Pitts was harassing him. *Id.*, PageID #17. Pitts was disciplined based on Takenaka's allegations.

---

[3] This apparently refers to the Hawaii MCCP. *See* Haw. Rev. Stats. § 671-12(a) ("[A]ny person or the person's representative claiming that a medical tort has been committed shall submit a statement of the claim to the medical claim conciliation panel before a suit based on the claim may be commenced in any court of this State.").

Pitts claims HCF and DPS Defendants violated the First, Sixth, Eighth, and Fourteenth Amendments; Hawaii state law; and DPS regulations. He seeks injunctive and declaratory relief, and compensatory and punitive damages.

## III. <u>DISCUSSION</u>

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

Additionally, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## A.     Improper Joinder

Unrelated claims that involve different defendants must be brought in separate lawsuits. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350-51 (9th Cir. 1997); *Kealoha v. Espinda*, 2017 WL 741570, at *4 (D. Haw. Feb. 24, 2017); *Tagle v. Nev. Dep't of Corr.*, 2016 WL 910174, at *2 (D. Nev. Mar. 9, 2016); *Washington v. Cal.  Dep't of Corr.*, 2016 WL 6599812, at *1 (E.D. Cal. Nov. 7, 2016).  This rule prevents confusion and ensures that prisoners pay the required filing fees for their lawsuits and prevents them from circumventing the three-strikes rule set forth under the Prison Litigation Reform Act.  *See George*, 507 F.3d at 607; 28 U.S.C. § 1915(g).  The court may sever misjoined parties as long as no substantial right is prejudiced by severance.  Fed. R. Civ. P. 21, *Coughlin*, 130 F.3d at 1350; *Evans v. Deacon*, 2016 WL 591758, at *6 (D. Or. Feb. 12, 2016).

Pitts sets forth two distinct causes of action that allegedly occurred at different times, in separate state facilities, and are attributable to different state actors at each facility.  The court discerns no connection between Pitts's claims in his First Cause of Action, involving his alleged involuntary medication on January 19, 2015, while he was committed at HSH, and his claims in his Second Cause of

Action, alleging that DPS and HCF officials and employees interfered with his mail, promoted an unconstitutional mail policy within DPS prison facilities, and retaliated against him for having filed a claim with the MCCP and grievances. Pitts's Second Cause of Action, alleging claims against DPS and HCF Defendants Espinda, Maesaka-Hirata, Kimoto, Hoffman, Sequiera, Tuitama, Yoshinaga, Paleka, Tom, Takenaka, and Bruhn, is severed from this action and DISMISSED without prejudice. Pitts may reassert these claims in a separate action, subject to payment of separate filing fees and separate pre-answer screening. The court proceeds to screen the First Cause of Action.

## B.    First Cause of Action As Alleged Against HSH Defendants

### 1.    *Excessive Force*

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). For claims alleging the use of excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency. *Hudson*, 503 U.S. at 8. Although de minimis

uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. *Wilkins*, 559 U.S. at 37-38 (citing *Hudson*, 503 U.S. at 9-10).

Pitts sufficiently states excessive force, assault and battery, intentional infliction of emotional distress, and negligence claims against HSH Defendant Tony Baker and HSH Does 1-5.

### 2. *Involuntary Medication*

The decision to forcibly medicate an inmate can implicate both substantive and procedural due process. *Washington v. Harper*, 494 U.S. 210, 222 (1990). Prisoners clearly have a liberty interest "in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *United States v. Loughner*, 672 F.3d 731, 744 (9th Cir. 2012) (quoting *Washington*, 494 U.S. at 221-22). That liberty interest, however, "must be 'defined in the context of an inmate's confinement.'" *Id.* at 745 (quoting *Washington*, 494 U.S. at 222). Prisoners may be involuntarily medicated if they pose a danger to themselves or others and the treatment is in their best medical interest, but they must be provided with procedural protections to ensure that the decision to medicate them involuntarily is not arbitrary or erroneous. *Washington*,

494 U.S. at at 227-28. *Washington*'s procedural requirements may not apply in an emergency situation. *See Hogan v. Carter*, 85 F.3d 1113, 1115-17 (4th Cir. 1996) (finding inmate's involuntary medication while suffering uncontrollable seizure for three hours necessary to protect inmate from imminent, self-inflicted harm); *Leeks v. Cunningham*, 997 F.2d 1330, 1335 (11th Cir. 1993) ("[T]he courts having concluded that under certain circumstances the involuntary administration of antipsychotic drugs were violative of due process, did so with an 'emergency exception.'" (citations omitted)); *but cf. Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir. 1998) (finding "loud and uncooperative" inmate did not present emergency sufficient for involuntary administration of strong antipsychotic medication without *Washington*'s procedural safeguards). Due process may also permit involuntary medication in other circumstances. *See Green v. Dormire*, 691 F.3d 917, 924 (8th Cir. 2012) (involuntary medication of inmate where "clinically necessary" does not violate due process).

Pitts states that there was a limited verbal confrontation between Defendant RN Emelda and him, but asserts that he calmly returned to his room to avoid conflict. He says Baker and HSH Does 1-5 suddenly appeared at his room after dinner, ordered him to the ground, injected him with tranquilizers (before they explained why they did so), then laughed and congratulated each other as they left

the room.  This states cognizable claims against Baker, HSH Does 1-5, and RN

Emelda, who apparently initiated the request for medication on false charges, for

the violation of due process, assault and battery, negligence, and intentional

infliction of emotional distress.

Pitts fails to provide sufficient facts to state a claim against Dr. Carla

Sheehan.  Pitts says only that Sheehan "*may* have ordered the forced injection on

me."  Compl., ECF No. 1, PageID #8 (emphasis added).  This wholly conclusory

statement is insufficient to hold Sheehan responsible for Pitts's alleged

involuntary and forcible medication.  Pitts has had two years to discover the

identity of the physician who ordered his medication; he cannot simply guess that

it was Dr. Sheehan.  Moreover, the fact that a physician prescribed tranquilizers

for Pitts based on RN Emelda's allegedly false report, does not plausibly lead to

the conclusion that this physician ordered that Pitts be forcibly and involuntarily

medicated.  That is simply Pitts's conclusion; it is not supported by the facts he

alleges.  Pitts fails to state a claim against Dr. Carla Sheehan and claims against

her are DISMISSED.

///

///

///

### 3.    Retaliation[4]

Pitts alleges that he was involuntarily medicated in retaliation for writing grievances and complaints against HSF staff.  He says he spoke with Defendant Catherine Davis, his patient advisor, "numerous times about the retaliation, unfair treatement [sic], and racial discriminatory abuse he was being subjected to because of his race, grievances, and written complaints against staff."  Compl., ECF No. 1, PageID #8.

To establish a retaliation claim, an inmate must allege that: (1) he engaged in constitutionally protected conduct; (2) a state actor took an adverse action against him; (3) there is a causal connection between the adverse action and the protected conduct; (4) the prison official's acts would chill or silence a person of ordinary firmness from further First Amendment activities; and (5) the official's acts did not reasonably advance a legitimate correctional goal.  *Watison*, 668 F.3d at 1114 (quoting *Rhodes*, 408 F.3d at 567-68); *see also Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  Direct or circumstantial evidence can demonstrate that a defendant

---

[4] This retaliation claim is distinct from Pitts's severed retaliation claim in the Second Cause of Action as alleged against HCF Defendant Gavin Takenaka regarding events that allegedly occurred at HCF between September and December 2015.  *See* Compl., ECF No. 1, PageID #17.

intended to inhibit free speech. *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999).

Filing grievances and complaints against staff is clearly protected activity. *Watison*, 668 F.3d at 1114. And the involuntary medication of an inmate without procedural protections (when no emergency exists) is an adverse action that would chill an ordinary person's exercise of First Amendment rights, which would not advance a legitimate correctional goal. Pitts, however, fails to allege facts showing *any* causal connection between his protected conduct – filing grievances and complaining – and his involuntary medication on June 19, 2015. That is, Pitts fails to allege facts that show his protected conduct "was 'the "substantial" or "motivating" factor behind defendant's conduct.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)) (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). Pitts does not state when he arrived at HSH or when he began filing grievances and making complaints. He fails to allege against whom he submitted grievances and why. He does not allege that he filed grievances or complaints against RN Emelda, Baker, or HSH Does 1-5 (who participated in his involuntary medication) *before* June 19, 2015, or that they were aware that Pitts had filed grievances against others. *See Wood v. Yordy*, 753 F.3d 899, 904-05 (9th Cir. 2014) (affirming summary judgment absent evidence that

defendants knew about plaintiff's prior lawsuit); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding prisoner failed to establish retaliation claim when no evidence was presented that prison officials knew of conduct giving rise to alleged retaliatory action); *see also Rhodes*, 408 F.3d at 567-68 (holding that prisoner alleging retaliation must show that state actor took adverse action *because* of prisoner's protected conduct); *Cejas v. Paramo*, 2017 WL 1166288, at *6 (S.D. Cal. Mar. 28, 2017) (finding inmate failed to state retaliation claim because he failed to allege sufficient causal connection between protected conduct and challenged actions).

Further, Pitts does not state when he spoke with Davis about the retaliation and harassment he allegedly endured, so the court cannot infer that Davis told the others about Pitts's claims of harassment. And, while Pitts alleges Defendant Dr. William Sheehan informed him that he found no records of Pitts's grievances regarding the incident, this occurred on September 10, 2015, three months *after* the involuntary medication incident, and could not have influenced the involuntary medication.

In short, Pitts has not sufficiently pled that any HSH Defendant retaliated against him for exercising his First Amendment right to pursue grievances, and his retaliation claim is DISMISSED with leave to amend.

### 4.    *Supervisory Liability*

Pitts names current Governor David Ige, and former Governor Neil Abercrombie,[5] and HSH Medical Director Dr. William Sheehan in their official and individual capacities for allegedly failing to adequately supervise or train subordinate HSH officials or employees.  Supervisory personnel may not be held liable under § 1983 for the actions of subordinate employees based on respondeat superior, or vicarious liability.  *Iqbal*, 566 U.S. at 676; *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc).

Under § 1983, a "supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Crowley*, 734 F.3d at 977 (internal citation and quotation marks omitted).  Supervisors may therefore be liable without personal participation if they "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation."  *Id.*

---

[5] Governor Ige is substituted for Abercrombie for Pitts's official capacity claims.  Fed. R. Civ. P. 25(d).

(citation and internal quotation marks omitted). The causal connection between

that supervisor and the claimed constitutional violation must be specifically

alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).

> Supervisors may be held liable under § 1983:
>
> (1) for setting in motion a series of acts by others, or knowingly
> refusing to terminate a series of acts by others, which they knew or
> reasonably should have known would cause others to inflict
> constitutional injury; (2) for culpable action or inaction in training,
> supervision, or control of subordinates; (3) for acquiescence in the
> constitutional deprivation by subordinates; or (4) for conduct that
> shows a "reckless or callous indifference to the rights of others."

*al Kidd v. Ashcroft*, 580 F.3d 949, 965 (9th Cir. 2009) (quoting *Larez v. City of

L.A.*, 946 F.2d 630, 646 (9th Cir. 1991), *overruled on other grounds by Ashcroft v.

al Kidd*, 563 U.S. 731 (2011)).

Pitts alleges no facts showing a causal connection between any supervisory

Defendant and the events that took place at HSH on June 19, 2015. *Crowley*, 734

F.3d at 977. He simply states "Respondeat Superior," "Failure to Properly Train

Hospital Staff," and "Failure to supervise and Enforce proper use of force

policies," without supporting details. Compl., ECF No. 1, PageID #7-8. Pitts

describes no personal action or inaction that Governors Abercrombie or Ige, or Dr.

Sheehan took directing or aquiescing in the June 19, 2015 incident. He alleges

nothing describing how HSH employees' training is deficient. Pitts sets forth no

policy that these Defendants allegedly approved or promulgated that allows the involuntary medication of any Hawaii citizen without procedural safeguards. Rather, Pitts directs the court to Haw. Rev. Stats. §§ 334-2 and 671, which provide safeguards against such possibilities.[6]

Pitts's "'naked assertion[s]' devoid of 'further factual enhancement'" fail to state a cognizable claim for relief under § 1983 against Governors Abercrombie or Ige, or Dr. Sheehan. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Pitts fails to allege that they were personally involved in the incident, knew of it before the fact, or had specific information that it might occur and failed to remedy it. *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007). Pitts's § 1983 claims against Defendants Abercrombie, Ige, and Sheehan are DISMISSED with leave to amend.

---

[6] Section 334-2 states:

> The department of health shall foster and coordinate a comprehensive mental health system utilizing public and private resources to reduce the incidence of mental or emotional disorders and substance abuse, to treat and rehabilitate the victims in the least restrictive and most therapeutic environment possible, and to provide treatment and care for homeless individuals with serious and persistent mental health challenges to enable them to reside in a permanent dwelling unit or homeless facility, as defined in section 346-361. The department shall administer such programs, services, and facilities as may be provided by the State to promote, protect, preserve, care for, and improve the mental health of the people.

Section 671-3, titled "Informed Consent," sets forth standards for Hawaii medical providers to follow in giving patients, or their legal guardians or surrogates, informed consent to treatment.

Pitts's state law claims based on the doctrine of respondeat superior, which holds an "employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency," *Nakamoto v. Kawauchi*, 2017 WL 986008, at *13 (Haw. Ct. App. Mar. 14, 2017), may proceed against Defendants Ige and Sheehan in their official capacities subject to further proceedings.

## IV.  <u>LEAVE TO AMEND</u>

The Complaint is DISMISSED in part with leave to amend as limited and discussed above.  Pitts may file an amended complaint on or before May 30, 2017, that cures the deficiencies in his First Cause of Action only.  Pitts's claims against DPS and HCF Defendants in his Second Cause of Action, for interference with his mail and retaliation are dismissed without prejudice to filing in a new action. These claims may not be reasserted herein.  Pitts must comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Hawaii if he elects to amend his pleading.

Pitts is notified that an amended complaint must be short and plain and comply with Rule 8 of the Federal Rules of Civil Procedure and that an amended complaint generally supersedes the preceding operative complaint.  *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Local Rule 10.3

requires that an amended complaint be complete in itself without reference to any prior pleading. Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey*, 693 F.3d at 928. Each claim and the involvement of each Defendant must be sufficiently alleged.

IN THE ALTERNATIVE:

Pitts may stand on his claims in his First Cause of Action against Defendants RN Emelda, Tony Baker, HCF Does 1-5, Governor David Ige, and Dr. William Sheehan as limited by this Order. Pitts must do so in writing on or before May 29, 2017. Upon receipt of such notification the court will order the U.S. Marshal to serve the Complaint as limited, at Pitts's direction. If Pitts fails to submit an amended complaint as described above or written notification that he will proceed on the claims in his First Cause of Action as limited, the court will direct the U.S. Marshal to serve the Complaint, First Cause of Action as limited herein, on Defendants RN Emelda, Tony Baker, HCF Does 1-5, Governor David Ige, and Dr. William Sheehan.

## V. <u>CONCLUSION</u>

(1) The Complaint is DISMISSED IN PART. Specifically, Pitts states a claim in his First Cause of Action, pages 7-8, against Defendants RN Emelda,

Tony Baker, HCF Does 1-5, Dr. William Sheehan, and Governor David Ige, and these claims may proceed.

(2) Pitts's Second Cause of Action, pages 9-17, is improperly joined with his First Cause of Action and is SEVERED without prejudice to reasserting these claims in a new action. These claims may not be realleged herein.

(3) On or before May 30, 2017, Pitts may either: (a) file an amended complaint curing the deficiencies noted above in his claims in his First Cause of Action; OR (b) notify the court in writing that he will stand on his claims as defined by this Order. Failure to do either will result in the court ordering the U.S. Marshal to serve the Complaint, as limited herein, on Defendants RN Emelda, Tony Baker, HSH Does 1-5, Governor David Ige, and Dr. William Sheehan.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 2, 2017.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Pitts v. Tuitama*, 1:17-cv-00137 JMS/KSC; scrn 2017 Pitts 17-137 jms (sever HSH DPS HCF; invol med. retal. mail)