IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOSEPH PITTS, #A0259019, )<br><br>Plaintiff, )<br>)<br>vs. )<br>)<br>SGT. TUITAMA, et al., )<br>)<br>Defendants. )<br>_____ ) | CIV. NO. 17-00137 JMS-KSC<br><br>ORDER DISMISSING FIRST<br>AMENDED COMPLAINT IN PART |

## <u>ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART</u>

Before the court is pro se Plaintiff Joseph Pitts's first amended prisoner civil

rights Complaint ("FAC") brought pursuant to 42 U.S.C. § 1983 and state law.

ECF No. 16. Pitts names officials and employees of the Hawaii Department of

Public Safety ("DPS") and Halawa Correctional Facility ("HCF") as Defendants.[1]

Pitts alleges that Defendants promulgated an allegedly unconstitutional mail

policy, interfered with his legal and personal correspondence, and retaliated

against him for filing lawsuits and grievances. The FAC is DISMISSED in part

with leave granted to amend as limited below.

---

[1] Pitts identifies past and present Governors Neil Abercrombie and David Ige; DPS
Director Nolan Espinda, Assistant Corrections Director Joedie Maesaka-Hirata, Divisions
Administrator Shari Kimoto, Appeals Branch Administrator Michael J. Hoffman, and Psychiatric
Supervisor Gavin Takenaka; ex-HCF Warden Francis Sequiera, Mail Supervisor Terri
Yoshinaga, Captain Dallen Paleka, Gang Intelligence Sergeants Bruhn and Tuitama, Corrections
Officer (CO) Ross Taylor, Jeff Tom, and John and Jane Does 1-30 as Defendants.

# I. SCREENING

Because Pitts is a prisoner and is proceeding in forma pauperis, the court

conducts a pre-answer screening of his pleading pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(a).  The court must sua sponte dismiss a prisoner's

complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or

seeks damages from defendants who are immune from suit.  *See Lopez v. Smith*,

203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C.

§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010)

(discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that

the targets of frivolous or malicious suits need not bear the expense of

responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014)

(describing pre-answer screening) ("*Nordstrom I*") (quoting *Wheeler v. Wexford

Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim

upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the

Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."

*Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v.

Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting screening pursuant to

§ 1915A "incorporates the familiar standard applied in the context of failure to

2

state a claim under Federal Rule of Civil Procedure 12(b)(6)").  Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard.  *Id.* at 678, 679.

Leave to amend should be granted if it appears the plaintiff can correct the complaint's defects.  *Lopez*, 203 F.3d at 1130.  A court may dismiss a complaint or claim without leave to amend, however, when "it is clear that the complaint could not be saved by any amendment."  *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

//

//

//

## II. BACKGROUND

### A. Procedural History

Pitts commenced this suit on March 28, 2017, asserting two distinct causes of action: (1) alleged excessive use of force and denial of medical care at the Hawaii State Hospital ("HSH") in June 2015; and (2) alleged ongoing interference with personal and legal correspondence and retaliation at HCF since 2014. *See* Compl., ECF No. 1.

On May 2, 2017, the court dismissed the Complaint in part because these claims were improperly joined. *See* Order, ECF No. 9, PageID #60-61 (severing claims pursuant to Fed. R. Civ. P. 21). Pitts was notified that his claims against certain HSH Defendants could proceed in this action, but that his claims against DPS and HCF Defendants must be brought in a separate action. *Id.*, PageID #72-73. Instead of following this course of action, on May 23, 2017, Pitts voluntarily dismissed his claims against HSH Defendants and elected to proceed with his claims against DPS and HCF Defendants. ECF No. 12.

### B. Allegations in the FAC

On July 19, 2017, Pitts filed the FAC. ECF No. 16. He alleges that Defendants violated the First, Sixth, Eighth, and Fourteenth Amendments, Hawaii

state law,[2] and DPS regulations by promulgating, enforcing, and following DPS inmate Correspondence Policy and Procedures COR.15.02 ("P&P COR.15.02").[3] *Id.*, PageID #97-104.

In Count 1, Pitts claims that Defendants Yoshinaga, Palleka, Bruhn, Tuitama, and Doe Defendants opened his privileged incoming and outgoing legal mail outside of his presence, and/or delayed, read, distributed, or otherwise interfered with his personal correspondence pursuant to P&P COR.15.02. He claims that their allegedly improper handling of his mail was done in retaliation for his pursuing grievances and civil litigation and because he is a jailhouse attorney. Pitts further alleges that P&P COR.15.02, as recently amended, improperly limits the amount of writing supplies and postage that indigent inmates may receive and improperly limits "Privileged" mail to correspondence between an inmate and his attorney or prospective attorney.

In Count 2, Pitts alleges that DPS Director Espinda and CO Taylor retaliated against him for naming them as defendants in *Pitts v. Espinda, et al.*, No. 1:15-cv-00483 JMS-KJM (D. Haw., filed Nov. 16, 2015). Pitts alleges Espinda

---

[2] Pitts alleges Defendants violated Haw. Rev. Stat. § 96-18, acted with negligence, gross negligence, intent to inflict emotional distress, were negligent, and are liable under the doctrine of respondeat superior.

[3] Pitts's allegations of material facts are accepted as true and construed in the light most favorable to him. *Nordstrom I,* 762 F.3d at 908.

denied his requests for a transfer (for his protection) to another facility, despite Espinda's personal knowledge that Pitts is subject to constant harassment, interference with his mail, and denial of edible food at HCF. Pitts claims that Espinda keeps him at HCF, at least in part, so that this retaliation can continue. Pitts claims that Taylor has personally harassed him since Pitts filed 1:15-cv-00483, by threatening and swearing at him and serving him inedible meals on at least two occasions.

In Count 3, Pitts alleges Defendant Takenaka fabricated false charges against him in retaliation for Pitts's filing a claim against Takenaka and HCF medical staff with the Department of Commerce and Consumer Affairs ("DCCA") Medical Inquiry and Conciliation Panel ("MICP").[4]

Finally, in Count 4, Pitts alleges that someone smeared feces and blood on his mattress during a cell shakedown on December 20, 2016. Pitts admits that he does not know who did this but speculates that it was Defendants named in No. 1:15-cv-00483 JMS-KJM. He concludes that Espinda is "endorsing or encouraging" this retaliation to deter Pitts from continuing with his lawsuits.

---

[4] Although Pitts also refers to this as an "MCCP" complaint (Medical Claims Conciliation Panel), for clarity, the court refers to this entity as the MICP only.

Pitts seeks injunctive and declaratory relief, and compensatory and punitive damages.

## III.  **DISCUSSION**

"To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right."  *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

Additionally, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and an affirmative link between the injury and that defendant's conduct.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**A.     Constitutional Right to Send and Receive Mail**

Prisoners retain a First Amendment right to send and receive mail in a manner consistent with legitimate penological objectives.  *Shaw v. Murphy*, 532 U.S. 223, 231 (2001); *Nordstrom v. Ryan*, 856 F.3d 1265, 1271-72 (9th Cir. 2017) ("*Nordstrom II*"); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  But an inmate's right to send and receive mail "is subject to 'substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security.'"  *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005) (citation omitted); *Nordstrom II*, 856 F.3d at 1272 (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974) (holding that prison officials may open, but not read, incoming legal mail in the presence of the inmate)).

Prison officials may therefore institute procedures for inspecting "legal mail," e.g., mail sent between attorneys and prisoners, *see Wolff*, 418 U.S. at 576-77, but "prisoners have a protected First Amendment interest in having properly marked legal mail [including civil legal mail] opened only in their presence."  *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017).  *See also O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (finding inspection of "legal mail" outside the prisoner's presence may have an impermissible

"chilling" effect on the constitutional right to petition the government). And under the Sixth Amendment's right to counsel, inmates have a right to be present when any legal mail related to a criminal matter is inspected. *Mangiaracina v. Penzone*, 849 F.3d 1191, 1195 (9th Cir. 2017) ("[E]ven a single instance of improper reading of [inmate's] mail can give rise to a constitutional violation."). *See also Nordstrom II*, 856 F.3d at 1272 (explaining that prison officials may inspect, but not read, an inmate's outgoing legal mail in his presence, and finding policy at issue was overbroad).

## B.  DPS Correspondence Policies:  P&P COR.15.02

The DPS defines "Privileged Correspondence" as "incoming and outgoing mail between an inmate and his/her attorney." P&P COR.15.02.3.0.8 (eff. July 29, 2016); *see* https://dps.hawaii.gov/wp-content/uploads/2016/08/COR.15.02. (last visited Aug. 15, 2017). Privileged correspondence may not be censored and is subject to inspection for contraband only in the inmate's presence. P&P COR.15.02.6.0. To qualify for privileged handling, the mail envelope must be marked "privileged" or "confidential" and show the attorney's name and law firm.

*Id.* Before July 29, 2016, mail from an attorney also required the attorney's bar number.[5]

"Official Correspondence" is defined as mail between an inmate and the state or federal courts; Ombudsman's Office; Hawaii Attorney General; Hawaii Paroling Authority ("HPA"); elected state and federal officials; and the DPS Director and Corrections Administrator. P&P COR.15.02.3.0.6. Official mail may be inspected, censored, or read for institutional security concerns outside of the inmate's presence.[6] P&P COR.15.02.7.3.

Personal correspondence, that is, all non-privileged mail, may be censored, read, and/or inspected outside of an inmate's presence for contraband and other security concerns. P&P COR.15.02.5.0.

All incoming correspondence will normally be processed within twenty-four hours, excepting weekends and holidays, subject to security restrictions for investigation or if it poses a threat. Outgoing privileged correspondence will ordinarily be logged and posted the same day as it is received, unless it is received

---

[5] Pitts complains of interference with legal mail *before* this amendment became effective. *See* FAC, ECF No. 16, PageID #98-99.

[6] Official Correspondence was previously designated as privileged. *See* P&P COR.15.02.4 (eff. Nov. 30, 2011); *see also Blaisdell v. Dep't of Public Safety*, No. 1:14-cv-00433 JMS-RLP (D. Haw. 2014), ECF No. 14 (Order (1) Denying Motion for Temporary Restraining Order and (2) Dismissing Complaint) (finding P&P COR.15.02.4 constitutional regardless of whether Official Correspondence was handled as privileged).

after the last mail pickup, on weekends and holidays, or must be held for inspection.  P&P COR.15.02.12.0.

## C.    Count 1:    Mail to and From Attorneys

Pitts claims that mail room staff Yoshinaga and Doe Defendants opened and inspected a letter marked "Confidential Legal Mail" from John Shum, Esq., outside of his presence.[7]  FAC, ECF No. 16, PageID #97.  He alleges additional mail to or from Shum, Lance T. Weber, Esq., and Barry Sooalo, Esq., was also opened outside of his presence, although he suggests this mail was not identified as privileged or confidential, or it lacked the attorney's bar number.[8]  *Id.*, PageID #98.

Pitts states a plausible claim against Yoshinaga and Doe Defendants regarding his claim that correspondence to and from attorneys Shum, Weber, and Soalo was inspected outside of his presence.  His mail from the Attorney General, court, and judge is discussed below.

---

[7] Shum is on record at HCF as Pitts's criminal defense attorney.

[8] *See* FAC, ECF No. 16, PageID #98 ("However no where [sic] in policy did it state if plaintiffs attorney or other legal correspondent neglects to mail the priviledged [sic] communication in compliance with DPS policy COR.15.02 Terri Yoshinaga or any mail room staff have the authority to open and inspect the contents of plaintiffs priviledged [sic] correspondence outside of his presense [sic].").

**D.	Count 1:	Privileged vs. Non-Privileged Mail**

Pitts challenges P&P COR.15.02 because it limits "Privileged Correspondence" to mail to and from attorneys and prospective attorneys.  He complains this improperly excludes mail between a prisoner and his psychiatrist, the MICP, the Department of Justice, Prison Rape Elimination Act ("PREA") officials,[9] the Attorney General, the HPA, the Ombudsman, and state or federal courts.  *See* P&P COR.15.02.6.0 (eff. Feb. 1 and July 29, 2016).  Pitts specifically claims that Yoshinaga and Doe Defendants refused to accept sealed mail addressed to the Ombudsman and the MICP unless he allowed them to inspect it for contraband, and opened mail to or from the Attorney General, a judge, and a court outside of his presence.  *Id.*, PageID #97-99.

Pitts fails to state a federal constitutional claim regarding this correspondence because it is not correspondence between Pitts and his attorney or prospective attorney and is not accorded the heightened protection reserved for confidential "legal mail" under federal law.  *See Wolff*, 418 U.S. at 576 (stating legal mail must be marked as from an attorney); *Hayes*, 849 F.3d at 1211 (defining

---

[9] P&P COR.15.02.10.0 directs inmates to report incidents of sexual abuse, sexual harassment, and retaliation in writing to the Office of the Ombudsman, Office of the Attorney General, Legislator or Political Representative, Sex Abuse Treatment Center, DPS officers or staff, a family member, or law enforcement per DPS Policy and Procedures ADM.08.08.  It does not explain whether or how such correspondence is to be handled as privileged or confidential.

inmates' legal mail as "properly marked" mail to and from attorneys and prospective attorneys, and holding the First Amendment does not prohibit opening non-legal mail, such as mail from the courts, outside of inmates' presence); *Hamilton v. Dep't of Corr.*, 43 F. App'x 107, 107 (9th Cir. 2002) (holding that, regardless of whether state law protects confidential correspondence between prisoners and certain public officials and agencies, "no such federal constitutional right exists"); *see also Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998).

Similarly, mail to and from government agencies, such as the HPA (part of DPS), MICP (part of DCCA), the Attorney General, and the Department of Justice, is not "legal mail," and may be opened and inspected outside of an inmate's presence. *O'Keefe*, 82 F.3d at 325-27 (holding that inspection of grievances mailed to state agencies did not violate First Amendment); *Grigsby v. Horel*, 341 F. App'x 314, 314-15 (9th Cir. 2009); *Smith v. Jovanovich*, 2017 WL 1403330, at *3 (D. Mont. Jan. 11 2017), *report and recommendation adopted*, 2017 WL 1410781 (D. Mont. Apr. 19, 2017).

In addition, mail to or from the Attorney General is not privileged because the Attorney General's office is neither representing nor seeking to represent Pitts. *Cf. Keenan*, 83 F.3d at 1094; *Hall v. Pelican Bay State Prison*, 2014 WL 4364856,

at *4 (N.D. Cal. Sept. 3, 2014) ("Only mail from [inmate's] own attorney (and not mail from opposing counsel or from a public agency or court) would be [defined as] confidential legal mail.").

Further, Pitts does not assert this mail involved his civil or criminal proceedings, or was properly marked as confidential legal mail. And, he does not allege that his mail to the MICP and Ombudsman was opened or inspected outside of his presence -- instead, he states that Defendants refused to accept this correspondence unless he allowed them to inspect it for contraband *in his presence*. Even if this mail was confidential legal mail, which is not apparent, prison officials may inspect it for contraband in Pitts's presence. *See Hayes*, 849 F.3d at 1211.

**E.     Count 1:     Hawaii Revised Statutes § 96-18**

Pitts states a plausible supplemental state law claim regarding Yoshinaga's and Doe Defendants' alleged refusal to post his sealed letter to the Ombudsman. Hawaii Revised Statutes Section 96-18 provides that, "[a] letter to the ombudsman from a person held in custody by an agency shall be forwarded immediately,

unopened, to the ombudsman." This state-law claim shall be served against Yoshinaga and mail room Doe Defendants.[10]

## F.  Count 1:  Non-privileged Personal Correspondence

Pitts alleges that Yoshinaga, Captain Palleka, Gang Intelligence Officers Bruhn and Tuitama, and Doe Defendants mishandled his personal correspondence. *See* FAC, ECF No. 16, PageID #99-102.  He complains that his personal mail is not delivered within twenty-four hours and is sometimes delayed for weeks without notice.  He alleges his mail is passed to and read by non-mail room staff, who taunt him about its contents, and is sometimes lost or returned to the sender without notice to Pitts.  Pitts says Palleka, who delivers the inmates' mail, told him that his mail was sometimes delayed so that the Gang Intelligence Unit could inspect it due to Pitts's alleged gang affiliation.

A prisoner retains those First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quotation marks omitted).  Clearly, prison officials may inspect a prisoner's mail for contraband and for other security concerns. *Id.*  A jail or prison may even

---

[10] At this screening stage, the court does not consider whether HRS § 96-18 creates a private cause of action. *See Hungate v. Law Office of David B. Rosen*, 139 Haw. 394, 406 (2017).

restrict an inmate's right to receive mail, but only if the regulations are
"reasonably related" to legitimate penological interests. *See Beard v. Banks*, 548
U.S. 521, 528 (2006); *Turner v. Safely*, 482 U.S. 78, 89-91 (1987); *Witherow*, 52
F.3d at 265. But prisoners have a due process right to be notified when incoming
mail is being withheld. *See Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999).

Allegations that mail delivery was delayed for an inordinate amount of time
are sufficient to state a claim for violation of the First Amendment. *See Antonelli
v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). But isolated delays or relatively
short-term, non-content-based disruptions in delivery of inmate mail are not
enough to state a First Amendment claim. *See Sizemore v. Williford*, 829 F.2d
608, 610 (7th Cir. 1987); *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974) (an
isolated incident of delay generally is insufficient to raise a § 1983 claim).

Pitts has no state or federal right to have his mail delivered within twenty-
four hours; this is a goal set forth in P&P COR.15.0212.0, subject to exceptions.
And Palleka's explanation that Pitts's mail is sometimes held for gang-affiliation
inspection indicates that prison officials have legitimate penological concerns
regarding Pitts's personal correspondence and have explained why his mail is at
times delayed. This does not explain why non-mail room staff and non-gang
intelligence officers had access to Pitts's personal mail, why Pitts is sometimes

16

given no information regarding the delay in his mail, and why his mail is delayed so often and for such lengthy times.

At this stage, without details of the circumstances or information pertaining to the possible "legitimate penological objectives" behind the various actions alleged, and the length of the delays, Pitts plausibly states a claim against Yoshinaga, Palleka, Bruhn, Tuitama, and mail staff Doe Defendants.

## G.    Count 1:    Indigent Postage Allowances

Pitts challenges P & P COR.15.02.14, which limits indigent inmates to the equivalent of three ounces of postage per week for privileged mail and one ounce per week for official and personal correspondence free of charge.  He alleges this rule discriminates against indigent inmates like him, who have criminal appeals, post-conviction proceedings, and civil suits proceeding in court simultaneously. This plausibly states a claim for relief and shall be served on Defendants Espinda and Maesaka-Hirata, who signed and approved this policy.

## H.    Retaliation Claims

A First Amendment retaliation claim has the following elements: (1) the plaintiff engaged in protected conduct; (2) a defendant state actor took adverse action against the plaintiff; (3) a causal connection exists between the protected conduct and the adverse action; (4) the adverse action is one that "would chill or

silence a person of ordinary firmness from future First Amendment activities,"
whether or not the plaintiff was in fact "chilled"; and (5) the retaliatory action did
not advance a legitimate penological goal. *Watison*, 668 F.3d at 1114; *see also
Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Because direct evidence of
retaliatory intent rarely can be pleaded in a complaint, alleging a chronology of
events from which retaliation can be inferred is sufficient to survive dismissal.
*See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be
considered as circumstantial evidence of retaliatory intent"). Filing grievances
and civil complaints against prison staff is clearly protected conduct. *Watison*,
668 F.3d at 1114.

### 1. Count 1

Pitts vaguely alleges that Yoshinaga, Doe Defendants, Palleka, Bruhn, and
Tuitama interfered with his mail because he has sued prison officials, is a known
"Jail House Attorney" and trouble maker, and has filed numerous complaints and
grievances against them and others over the years. *See* FAC, ECF No. 16, PageID
#11 (Count 1). Although these claims are somewhat conclusory, Pitts plausibly
states a claim against Yoshinaga, Palleka, Bruhn, Tuitama, and Doe Defendants,
and they are required to respond.

### 2. *Count 2*

Pitts alleges that Director Espinda refused to transfer him for his safety (and kept Pitts at HCF for continuing retaliation) and that CO Taylor twice tampered with his meals. This states a plausible retaliation claim against them.

### 3. *Count 3*

Pitts alleges that HCF Psychiatric Supervisor Gavin Takenaka fabricated false charges against him after Pitts filed a complaint against Takenaka and HCF medical staff in 2015. Although this claim is tenuously connected to his other claims of retaliation, it adequately states a plausible retaliation claim against Takenaka and shall proceed.

### 4. *Count 4*

Pitts alleges unknown individuals smeared feces and blood on his mattress during a cell shakedown. He speculates that a defendant or defendants named in No. 1:15-cv-00483 JMS-KJM did this, although he admits he does not know who is responsible for this incident. *Id.*, PageID #107. This conclusory and speculative allegation fails to plausibly state a federal or state claim and is DISMISSED.

## I. Supervisory Liability Under § 1983

Supervisory personnel may not be held liable under § 1983 for the actions of subordinate employees based on a theory of respondeat superior, or vicarious liability. *Iqbal*, 566 U.S. at 676; *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). That is, individuals cannot be held liable under § 1983 based only on their position as a director or superintendent of a penal institution or governor of a state. *See Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (an individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement").

Under § 1983, a "supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley*, 734 F.3d at 977 (internal citation and quotation marks omitted). Supervisors may therefore be liable without personal participation if they "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Id.* (citation and internal quotation marks omitted). The causal connection between

that supervisor and the claimed constitutional violation must be specifically

alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).

> Supervisors may be held liable under § 1983:
>
> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others."

*al Kidd v. Ashcroft*, 580 F.3d 949, 965 (9th Cir. 2009) (quoting *Larez v. City of*

*L.A.*, 946 F.2d 630, 646 (9th Cir. 1991), *overruled on other grounds by Ashcroft v.*

*al Kidd*, 563 U.S. 731 (2011)).

Pitts names Governors Abercrombie and Ige,[11] Director Espinda, Deputy

Director Maesaka-Hirata, Acting Deputy Director Kimoto, DPS Appeals

Administrator Hoffman, ex-HCF Warden Sequiera, and Jeff Tom in their official

and individual capacities, apparently based on their positions alone. He alleges

Espinda, Kimoto, and Maesaka-Hirata created and implemented the allegedly

constitutionally infirm P&P COR.15.02. Because Espinda and Maesaka-Hirata

---

[11] Governor Ige is substituted for ex-Governor Abercrombie in relation to Pitts's official-capacity claims. *See* Order, ECF No. 9, PageID #68, n.5.

signed and approved the policy, Pitts plausibly states a claim against them regarding the indigent-postage policy set forth in P&P COR.15.02.6.0.

Pitts alleges *no* facts showing a causal connection between Governors Abercrombie and Ige, Kimoto, Hoffman, Sequiera, and Tom and his allegations. *Crowley*, 734 F.3d at 977. Pitts fails to show that they were personally involved in any alleged incident, knew of these incidents before the fact, or had specific information that these incidents might occur and failed to remedy the issues. *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007). Pitts's "'naked assertion[s]' devoid of 'further factual enhancement'" fail to state a cognizable claim for relief under § 1983 against Abercrombie, Ige, Kimoto, Hoffman, Sequiera, or Tom. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

To the extent Pitts suggests liability against Sequiera, Kimoto, and Hoffman for denying or upholding the denial of his grievances, and this is entirely unclear, Pitts fails to state a claim because an official's denial of a grievance does not itself violate the constitution. *Evans v. Skolnik*, 637 F. App'x 285, 288 (9th Cir. 2015), *cert. dism'd*, 136 S. Ct. 2390 (2016). Pitts's § 1983 claims against Defendants Abercrombie, Ige, Kimoto, Hoffman, Sequiera, and Tom are DISMISSED.

## J.     State Law

Pitts moves the court to take supplemental jurisdiction over his state-law claims.  Mot., ECF No. 17.  The FAC invokes jurisdiction under the Hawaii Constitution[12] and Haw. Rev. Stat. § 96-18, and Pitts broadly alleges claims for negligence, intentional infliction of emotional distress, and respondeat superior. ECF No. 16, PageID #94 & 108-09.[13]  "Supplemental jurisdiction over state claims exists when a federal claim is sufficiently substantial to confer federal jurisdiction and there is 'a common nucleus of operative fact between the state and federal claims.'"  *Maizner v. Haw. Dep't of Educ.*, 405 F. Supp. 2d 1225, 1241 (D. Haw. 2005) (quoting *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir.1995) (citations omitted)).

---

[12] It is unclear whether Hawaii recognizes a private cause of action for damages for violation of rights guaranteed under the Hawaii State Constitution.  *See, e.g., Annan-Yartey v. Muranaka*, 2017 WL 1243499, at *3 n.8 (D. Haw. Apr. 3, 2017) (listing cases); *Ilae v. Tenn*, 2013 WL 4499386, at *17 (D. Haw. Aug. 20, 2013); *Galario v. Adewundmi*, 2009 WL 1227874, at *11 (D. Haw. May 1, 2009), *rev'd in part on other grounds by Galario v. Adewundmi*, 531 F. App'x 830 (9th Cir. 2013); *Makanui v. Dep't of Educ.*, 6 Haw. App. 397, 403, 721 P.2d 165, 170 n.2 (Haw. Ct. App. 1986).  In any event, Pitts alleges insufficient details under the Hawaii Constitution to state a claim.

[13] Pitts alleges John and Jane Doe(s) 1-10, Espinda, Kimoto, and Maesaka-Hirata are liable under the theory of respondeat superior for failure to "properly train, retain, monitor and supervise mailroom staff, intentional infliction of emotional distress, gross negligence," and for failure "to adequately remand and prevent d[e]fendants from[]harming plaintiff, negligent management of HCF, Negligent and unreasonable failure to adopt and implement policies and procedures to supervise and protect plaintiff."  FAC, ECF No. 16, PageID #108-09.

As noted above, Pitts plausibly alleges a violation of Haw. Rev. Stats. § 96-18, regarding HCF mail staff's alleged refusal to accept his sealed mail to the Ombudsman, and this claim shall proceed.

To the extent Pitts alleges intentional infliction of emotional distress, he fails to allege sufficient facts to establish that any individual Defendant's action was sufficiently "outrageous" to proceed. *Hac v. Univ. of Hawaii*, 102 Haw. 92, 95, 73 P.3d 46, 49 (2003). "The standard for outrageous conduct is high: [l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kona's Best Nat. Coffee LLC v. Mountain Thunder Coffee Plantation Int'l, Inc.*, 2017 WL 3310451, at *21 (Haw. Ct. App. Aug. 2, 2017) (citing *Dunlea v. Dappen*, 83 Haw. 28, 38, 924 P.2d 196, 206 (1996) (quotations omitted). Pitts's claims for intentional infliction of emotional distress are DISMISSED.

To the extent Pitts alleges negligence, he must "prove (1) a duty recognized by the law that the defendant owed to the plaintiff; (2) a breach of the duty; (3) that the defendant's breach was the legal cause of the plaintiff's harm; and (4) actual damages." *O'Grady v. State*, 140 Haw. 36, 398 P.3d 625, 632 (2017), *amended* (June 22, 2017) (citing, e.g., *Doe Parents No. 1 v. Dep't of Educ.*, 100

Haw. 34, 68, 58 P.3d 545, 579 (2002)).  Pitts plausibly alleges sufficient facts to

proceed with his negligence claims against Yoshinaga and Doe mailroom staff,

Palleka, Bruhn, and Tuitama for negligent interference with his mail.  He also

plausibly alleges that Espinda and Maesaka-Hirata negligently promulgated and

approved P&P COR.15.02.14, regarding indigent inmates' access to postage and

supplies.  Pitts fails to allege sufficient facts against any other Defendant to

proceed on a negligence claim.

To the extent Pitts alleges that Espinda and Maesaka-Hirata are liable for

Yoshinaga's and Doe mailroom staff, Palleka's, Bruhn's, and Tuitama's alleged

negligent handling of his mail under the doctrine of respondeat superior, which

holds an "employer or principal liable for the employee's or agent's wrongful acts

committed within the scope of the employment or agency," *Nakamoto v.*

*Kawauchi*, 2017 WL 986008, at *13 (Haw. Ct. App. Mar. 14, 2017), those claims

may proceed.  Pitts fails to allege sufficient facts against any other Defendant to

proceed under the theory of respondeat superior, however, and such claims are

DISMISSED.

## IV.  LEAVE TO AMEND

The First Amended Complaint is DISMISSED in part with leave to amend

as limited above.  Pitts may file an amended complaint on or before October 2,

2017, that attempts to cure his claims' deficiencies.  Pitts must comply with the
Federal Rules of Civil Procedure and the Local Rules of the United States District
Court for the District of Hawaii if he elects to amend his pleading.  Local Rule
LR10.3 requires that an amended complaint be complete in itself without reference
to any prior pleading.  Any amended complaint must be short and plain and
comply with Rule 8 of the Federal Rules of Civil Procedure and will generally
supersede the preceding complaint.  *See Ramirez v. Cty. of San Bernadino*, 806
F.3d 1002, 1008 (9th Cir. 2015).  Defendants not renamed and claims not
realleged in an amended complaint may be deemed voluntarily dismissed.  *See
Lacey*, 693 F.3d at 928.  Any amended complaint must be submitted on the court's
prisoner civil rights form.  LR99.7.10.

**IN THE ALTERNATIVE**:

In writing on or before October 2, 2017, Pitts may elect to stand on his
claims in his First Amended Complaint as limited by this Order.  On receipt of
such notification, or if Pitts fails to timely submit an amended complaint, the court
will order the U.S. Marshal to serve the First Amended Complaint, as limited, on
Defendants Yoshinaga, Palleka, Bruhn, Tuitama, Espinda, Maesaka-Hirata,
Taylor, and Takenaka without further notice.

# V.  <u>DOE DEFENDANTS</u>

Doe pleading is generally disfavored.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  When a party's identity is not known prior to filing an action, as here, Ninth Circuit authority permits a plaintiff the opportunity to pursue appropriate discovery to identify the unknown Does, unless it is clear that discovery would not uncover their identity, or the complaint should be dismissed for other reasons.  *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

Although Pitts is proceeding in forma pauperis and is entitled to U.S. Marshal Service, the Marshal cannot serve unknown Doe Defendants.  *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (stating the plaintiff is required to "furnish[] the information necessary to identify the defendant" before the U.S. Marshal can effect service under Rule 4).  Once his pleading is ordered served, Pitts may use the discovery process to obtain the names of the unidentified mailroom staff.  Pitts is responsible for identifying these Doe Defendants and for moving to amend the complaint to substitute named defendants in place of Does. He is cautioned that "authorities clearly support the proposition that John Doe defendants must be identified and served within [90] days of the commencement of the action," and may be dismissed for failure to effect service after that time,

unless good cause is shown for the failure to timely serve them.[14]  *Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill. 1995) (citing *Gillespie*, 629 F.2d at 643); Fed. R. Civ. P. 4(m) & 15(c)(1).

# VI.  <u>CONCLUSION</u>

(1)  The First Amended Complaint is DISMISSED IN PART.

(2)  Pitts states federal constitutional claims in Count 1 against Defendants Terri Yoshinaga, Dallen Palleka, Nolan Espinda, Jodie Maesaka-Hirata, Sgt. Bruhn, Sgt. Tuitama, and Doe Defendants; in Count 2 against Defendants Nolan Espinda and Ross Taylor; and in Count 3 against Defendant Gavin Takenaka. These claims against these Defendants may be served and require a response.

(3)  Pitts fails to state a state or federal claim in Count 4, and in any Count against Defendants former Governor Abercrombie, Governor David Ige, Shari Kimoto, Michael J. Hoffman, Francis Sequiera, and Jeff Tom.  These claims against these Defendants are DISMISSED with leave to amend.

(4)  Pitts states state-law claims under Haw. Rev. Stat. § 96-18, for negligence, and respondeat superior as limited above against Defendants

---

[14] Because prisoner complaints must be screened before service, service is generally not required until 90 days after the court finds the pleading states a claim and directs the U.S. Marshal or prisoner to effect service.  *See e.g.*, *Long v. Does*, 2016 WL 3983226, at *4 (D. Haw. July 25, 2016); *Warren v. Ruffcorn*, 2001 WL 34043449, at *3 (D. Or. Sept. 18, 2001).

Yoshinaga and Doe Defendants mail staff, Palleka, Bruhn, Tuitama, Espinda, and Maesaka-Hirata and these claims require a response.

(5)  On or before October 2, 2017, Pitts may either: (1) file an amended complaint attempting to cure the deficiencies in his dismissed claims; or (2) notify the court in writing that he will stand on the plausible claims defined by this Order.  If Pitts fails to timely accomplish either option, the court will order the U.S. Marshal to serve the First Amended Complaint, Counts 1, 2, and 3 as limited, on Defendants Terri Yoshinaga, Dallen Palleka, Nolan Espinda, Jodie Maesaka-Hirata, Sgt. Bruhn, Sgt. Tuitama, Gavin Takenaka, and Ross Taylor.

(6)  The Clerk is DIRECTED to send Pitts a blank prisoner civil rights complaint form so that he may amend his claims to comply with the directions in this Order.

(7)  Pitts's Motion for Court to Recognize Pendant State Law Claims, ECF No. 17, is DISMISSED as moot.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 1, 2017.



　　　　　　　　　　　/s/ J. Michael Seabright
　　　　　　　　　　　J. Michael Seabright
　　　　　　　　　　　Chief United States District Judge

*Pitts v. Tuitama*, 1:17 cv 00137 JMS/KSC; scrn 2017 Pitts 17 137 jms (dsm FAC in part; mail, retal.)