IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOSEPH PITTS, #A0259019, | ) | CIV. NO. 17-00137 JMS-KJM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING IN PART AND |
| | ) | GRANTING IN PART |
| vs. | ) | DEFENDANTS' MOTIONS FOR |
| | ) | SUMMARY JUDGMENT |
| SGT. TUITAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Before the court are Defendants' Terri Yoshinaga, Dallen Paleka, Piliopo Tuitama, and Arnubi Bruhn's Motions for Summary Judgment, ECF Nos. 116, 117; and Defendants Nolan Espinda, Jodie Maesaka-Hirata, and Gavin Takenaka's Motion for Substantive Joinder in Yoshinaga's Motion for Summary Judgment, ECF No. 126 (collectively, "Defendants" and "Defendants' Motions"). Defendants assert that pro se Plaintiff Joseph Pitts[1] failed to exhaust available prison administrative remedies regarding his claims before filing this suit, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).

---

[1] Pitts is currently incarcerated at the Halawa Correctional Facility ("HCF").

On April 22, 2019, the court held a hearing on Defendants' Motions. Deputies Attorney General Tara K. Molnar, Gregg M. Ushiroda, and Jennifer C. Carson appeared on behalf of Defendants. Pitts participated by telephone.

After careful consideration of the parties' arguments and the entire record, the court finds that Pitts exhausted available administrative remedies regarding his claims that: (1) Yoshinaga mishandled his legal mail from attorneys; (2) Yoshinaga, Paleka, Tuitama, and Bruhn mishandled his incoming and outgoing personal mail; and (3) Takenaka and Yoshinaga retaliated against him. Defendants' Motions for Summary Judgment are DENIED regarding these claims.

The court finds that Pitts failed to timely or fully exhaust his claims regarding (1) Espinda's and Maesaka-Hirata's approval of an allegedly discriminatory policy limiting indigent inmates' access to writing supplies, COR.15.02.14.2; (2) Espinda's, Paleka's, Bruhn's, and Tuitama's alleged retaliation against him; and (3) the rejection of a sealed letter to the Office of the Ombudsman. Defendants' Motions for Summary Judgment are GRANTED as to these claims, and the claims are DISMISSED without prejudice.

//

//

//

# I. **BACKGROUND**

A. **Procedural History**

Pitts brought this suit on March 21, 2017,[2] alleging claims against Hawaii

State Hospital ("HSH") staff for events that allegedly occurred in June 2015, and

against HCF and Department of Public Safety ("DPS") officials regarding events

that allegedly occurred between 2014 and 2017 at HCF. *See* Compl., ECF No. 1,

PageID #9-17. Pitts named all Defendants in their official and individual capacities.

*Id.*, PageID #4. On May 2, 2017, the court severed Pitts' claims against HCF and

DPS Defendants from his claims against HSH Defendants, without prejudice to his

bringing them in separate actions. ECF No. 9.

On July 17, 2017, Pitts dismissed his claims against HSH Defendants and

filed the first amended complaint ("FAC") asserting claims against HCF and DPS

Defendants only. ECF No. 16. The FAC realleged the claims against HCF and

DPS Defendants that were in the original Complaint, added details regarding Pitts'

---

[2] The Complaint is deemed filed on the date Pitts gave it to prison officials for filing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (explaining prison mailbox rule); *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009); *see also* ECF No. 1-2 (envelope) .

original retaliation claims, and asserted a new retaliation claim against Defendant Ross Taylor that allegedly occurred after the original Complaint was filed.[3]

On September 5, 2017, the court dismissed the FAC in part, with leave to amend to cure the deficiencies in the dismissed claims.[4]  ECF No. 18.  Pitts was also given the option of serving the FAC's colorable claims immediately, as limited by the Order.

On December 19, 2017, Pitts filed the operative, second amended complaint ("SAC").[5]  ECF No. 30.  The SAC is nearly identical to the FAC, with the addition of a new retaliation claim against Yoshinaga for actions allegedly taken days before Pitts filed the SAC.  *See id.*, PageID #171-73.

On January 8, 2018, the court screened the SAC, again dismissed Count 4 and all claims against Defendants Abercrombie, Ige, Kimoto, Hoffman, Sequeira, and Tom, directed service of Counts 1-3, and 5, as limited, and directed the remaining Defendants to respond.  ECF No. 31.

---

[3] Taylor takes no position on Defendants' Motions and the court does not address Pitts' claims against him.  *See* ECF No. 188.

[4] The court dismissed Count 4, and all claims against Defendants Neil Abercrombie, David Ige, Shari Kimoto, Michael J. Hoffman, Frances Sequeira, and Jeff Tom.

[5] Pitts gave the SAC to prison officials on December 19, it was mailed December 20, and docketed December 22, 2017.  ECF No. 30-10.

On July 5 and 12, 2018, Defendants filed their Motions. ECF Nos. 116, 117, 126. Defendants have also filed supplemental briefing as directed by the court. *See* ECF Nos. 169-171. The court docketed Pitts' Memorandum in Opposition to Defendants' Motions on April 4, 2019 and Defendants filed their Replies on April 8, 2019. ECF Nos. 212, 213-216.

## B.     Claims Against Defendants in the SAC

In Count 1, Pitts alleges: (a) HCF Mail Supervisor Yoshinaga and mail room staff inspected mail from Pitts' attorneys outside of his presence between June 25, 2014, and November 30, 2015; (b) Yoshinaga, Gang Intelligence Unit ("GIU") officers Captain Paleka, Tuitama, and Bruhn delayed Pitts' incoming and outgoing personal mail, without giving him notice, to harass and retaliate against him; (c) DPS Director Espinda and Deputy Director Maesaka-Hirata implemented allegedly discriminatory DPS policies, COR.15.02. (pertaining to indigent writing supplies), and COR.15.02. (pertaining to inspecting and handling inmate mail).[6] SAC, ECF No. 30, PageID #159-67.

In Count 2, Pitts alleges that Espinda denied Pitts' requests to transfer in retaliation for Pitts filing lawsuits against DPS. *Id.*, PageID #168.

---

[6] The court dismissed this claim as it related to mail to and from the court, state officials, and state agencies; only Pitts' state law claim regarding a letter he tried to mail to the Ombudsman remains. *See* Order, ECF No. 31.

In Count 3, Pitts alleges DPS Mental Health Care Supervisor Takenaka filed a false misconduct report in retaliation for Pitts having filed a state court tort action against Takenaka. *Id.*, PageID #169. Pitts was disciplined on the basis of Takenaka's report.

In Count 5, Pitts alleges Yoshinaga retaliated against him by interfering with his personal mail in early December 2017, days before he filed the SAC. *Id.*, PageID #171-73.

## II. <u>STANDARDS OF REVIEW</u>

### A. 42 U.S.C. § 1997e(a): Exhaustion of Administrative Remedies

The PLRA provides that no "action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust their available administrative remedies before filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam). Exhaustion applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner or the relief offered by the process, unless "the relevant administrative procedure lacks

authority to provide *any* relief or to take *any* action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736, 741 (2001) (emphases added); *Ross v. Blake*, 136 S. Ct. 1850, 1857, 1859 (2016).

"Under the PLRA, a grievance 'suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (quoting *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (further quotations omitted)). A grievance:

> "need not include legal terminology or legal theories," because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued."

*Id.* (alteration in original) (internal citations omitted). Thus, a grievance need not always specifically name a particular defendant to have exhausted a claim against that defendant. *Id.*

There are no "special circumstances" that excuse exhaustion, beyond the requirement that "remedies must indeed be 'available' to the prisoner." *Ross*, 136 S. Ct. at 1862, 1856. There are only three limited "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. Exhaustion may be excused only when:

(1) the "administrative procedure . . . operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates;"

(2) the "administrative scheme . . . [is] so opaque that . . . no ordinary prisoner can make sense of what it demands;" and

(3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*See id.* at 1859-60 (internal citations omitted).  Section 1997e(a) otherwise "foreclos[es] judicial discretion," and "a court may not excuse a failure to exhaust, even to take [special] circumstances into account."  *Id.* at 1856-57.

"When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017).  And, a prisoner need not proceed through all levels of the administrative remedy program if he is satisfied with the relief he obtains at an earlier stage.  *See Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010); *see also Reece v. Sisto*, 536 F. App'x 705, 706 (9th Cir. 2013) (concluding that a fully-granted appeal at the first level was sufficient to exhaust remedies, even when the relief provided was not the exact relief plaintiff requested).

The proper remedy for an inmate's failure to exhaust is dismissal without prejudice of those portions of the complaint that are barred by § 1997e(a), not

dismissal of the whole suit. *Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

**B.      Summary Judgment**

Under Rule 56, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact and that summary judgment is proper as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* All inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Failure to exhaust is an affirmative defense. *Jones*, 549 U.S. at 216. The defendant must first prove that there was an available administrative remedy that was unexhausted by the inmate. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014)). If the

defendant carries that burden, the burden shifts to the inmate to "show that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id.* (quoting *Albino*, 747 F.3d at 1172).

For purposes of opposing summary judgment, the contentions offered by a pro se litigant in motions and pleadings are admissible to the extent that they are based on personal knowledge, set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). "[C]onclusory allegations unsupported by factual data," however, are insufficient to rebut summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

## C.     DPS Administrative Remedies

The DPS Inmate Grievance Program ("IGP") is contained in Corrections Administration Policy and Procedures Manual ("PPM"), COR.12.03. *See* ECF Nos. 118-4, 118-5. An inmate may pursue informal resolution of a claim, but this step is no longer mandatory and it never constituted compliance with the IGP. *Compare* ECF No. 118-4, PageID #693 *with* ECF No. 118-5, PageID #704. The IGP has a three-step grievance procedure that applies to all inmates regarding

incidents that arose while an inmate was incarcerated at a facility in Hawaii.

COR.12.03.4.1.

Generally, a prisoner must file an initial, Step-1 grievance within fourteen days of the incident grieved, subject to certain exceptions. COR.12.03.8. If the inmate is unsatisfied with the response he receives, or fails to receive a timely response, he may file a Step-2 grievance to the Warden/Branch/Core Program Administrator; if still unsatisfied or his grievance is unanswered, he may file a final Step-3 grievance to the Division Administrator, which is considered full exhaustion of the IGP. COR.12.03.8.3(c). An inmate may also submit a grievance directly to the Division Administrator in a sealed envelope marked "Confidential" if he "reasonably believes the issue is sensitive," or fears for his safety if he pursued the normal grievance procedure. COR.12.03.8.3(b). The current IGP explicitly notifies prisoners that completion of all three steps is normally required before filing litigation in the federal courts. *See* IGP II, ECF No. 118-5, COR.12.03.4.7.

## D. **Relevant Dates for Exhaustion of Pitts' Claim**s

Pitts is required to have exhausted his claims in Counts 1-3, which were alleged in the original Complaint, before its March 21, 2017 filing date. *See Jones*, 549 U.S. at 211; *Akhtar v. J. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012) ("'[A] prisoner does not comply with [the exhaustion] requirement by exhausting available

remedies during the course of the litigation.'") (quoting *McKinney*, 311 F.3d at 1199 and citing *Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010)). Pitts is required to have exhausted his new retaliation claim against Yoshinaga in Count 5 before December 19, 2017, when he brought this new claim in the SAC. *Akhtar*, 698 F.3d at 1210 (holding that, if "a plaintiff files an amended complaint adding new claims based on conduct that occurred after the filing of the initial complaint, the plaintiff need only show that the new claims were exhausted before tendering the amended complaint to the clerk for filing").[7]

### III. **DISCUSSION**

#### A. **Preliminary Issues**

Defendants ask the court to strike or disregard Pitts' Opposition as untimely, unsupported by competent evidence, and misleading. *See* Defs.' Replies, ECF Nos. 213, 214, 216.

Pitts objects to Defendants' Motions as untimely filed, argues that his grievances were either stolen or withheld from him during during discovery, and asserts that, because he requested a jury trial, the Motions must be decided by a jury. Pl. Opp'n, ECF No. 212, PageID #1637 (citing *Blount v. Johnson*, 373 F.

---

[7] Additionally, "claims that arose as a cause of action prior to the filing of the initial complaint may be added to a complaint via an amendment, as long as they are administratively exhausted prior to the amendment." *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014).

Supp. 2d 615, 619 (W.D. Va. 2005), *vacated*, 2005 WL 2246558 (W.D. Va. Sept. 15, 2005).

First, Pitts gave his Opposition to prison authorities for filing on March 31, 2019, the day before it was due. *See* ECF No. 212-11 (envelope). Pitts provided an incomplete mailing address, however, which HCF mail staff corrected on April 1, and then mailed the Opposition to the court on April 2, 2019. *See id.* Pitts' Opposition is therefore timely under the prison mailbox rule because it was in prison authorities' control on April 1, 2019.[8] *See Houston*, 487 U.S. at 276.

Second, the court does not rely on Pitts' unsupported assertions that his grievances were stolen or that Defendants refused to produce his grievances during discovery to resolve the Motions, because there is ample, competent evidence in the record detailing Pitts' grievances, including evidence that Pitts himself provided, that is sufficient to resolve the Motions. *See* ECF Nos. 212-1, 212-2. Defendants' requests are DENIED.

//

//

---

[8] The court recognizes the difficulty Defendants encountered by receiving Pitts' Opposition only four days before their Replies were due, and will take that into consideration in the future when setting briefing schedules in pro se prisoner actions.

Third, the deadline for exhaustion motions was July 5, 2018, the date the Motions were filed. They are timely. *See* Rule 16 Scheduling Order, ECF No. 106.

Finally, Pitts' reliance on *Blount,* which is a vacated, non-precedential, out-of-circuit case, is misplaced. *Blount* did *not* hold that the ultimate trier-of-fact must determine motions for summary judgment regarding the issue of exhaustion, as Pitts argues. *Blount* held that *if* genuine issues of material fact preclude a finding that an issue is exhausted, then the trier-of-fact must resolve the issue at trial. 373 F. Supp. 2d at 619. Pitts' objections are overruled.

## B.      Capacity to be Sued

Yoshinaga alleges that, because Pitts failed to name her in her personal capacity, his claims for money damages against her are barred by the Eleventh Amendment. She further asserts that, as she was acting "at all times in her official capacity as a PSD employee, the Eleventh Amendment bars such a suit, and summary judgment should likewise be entered in her favor." ECF No. 116-1, PageID #631.

Pro se pleadings are "to be liberally construed" and "held to less stringent standards" than those drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); Fed. R. Civ. P. 8(e) (requiring that pleadings "be construed so as

to do justice"). A state official is sued in his or her official capacity if injunctive relief against the state is sought, and in an individual capacity if relief is sought from the official personally. *Pena v. Gardner*, 976 F.2d 469, 475 (9th Cir. 1992) (Nelson, J., specially concurring), *as amended* (Oct. 9, 1992); *Jones v. Becerra*, 2018 WL 2094359, at *4 (C.D. Cal. Mar. 30, 2018), *adopted*, 2018 WL 2094353 (C.D. Cal. May 3, 2018). When it is unclear whether defendants are sued in official or individual capacities, the court must examine "[t]he course of proceedings" to determine the capacity in which each defendant is sued. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

Pitts named all Defendants in their individual and official capacities in the original Complaint; apparently, he inadvertently failed to renew this assertion in the SAC. His claims against Yoshinaga in the SAC are nearly identical to those alleged in the original Complaint. And throughout the SAC, Pitts refers to Yoshinaga personally by name and as the HCF mail supervisor. His claims are based on Yoshinaga's personal actions regarding his mail, as well as alleged actions taken in her official capacity in complying with or promoting an allegedly unconstitutional State policy. Accordingly, the court construes the SAC as alleging claims against Yoshinaga in her official and individual capacities. *See Nakamura v. Honolulu Cmty. Coll.*, 2013 WL 3147266, at *3 (D. Haw. June 18, 2013).

Yoshinaga's argument that the Eleventh Amendment otherwise bars Pitts' claims against her in her official capacity is simply incorrect. Pitts seeks prospective injunctive relief regarding the allegedly unconstitutional mail policy and Yoshinaga's alleged ongoing interference with his mail. These claims are colorable as alleged against a state official in an official capacity. *See Pena*, 976 F.2d at 475; *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (stating defendants named in their official capacities are subject to suit under § 1983 "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law") (quotation and citation omitted); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

## C. Exhaustion

Defendants revised their arguments somewhat in their Reply briefs. Yoshinaga now concedes that Pitts fully exhausted available remedies regarding "the inspection, reading, and delay of mail." Reply, ECF No. 213, PageID #1725-26. She argues that she is entitled to partial summary judgment, however, because Pitts' grievances challenging (1) the opening of his legal mail do not explicitly refer to the legal mail cited in the SAC; (2) interference with his letter to the Ombudsman does not allege that she was involved; and (3) COR.15.02., as it relates to indigent inmate writing supplies, does not allege that she was involved in this claim.

16

Paleka, Tuitama, and Bruhn now argue that, although Pitts exhausted general claims regarding the mishandling of his personal mail, he failed to identify Tuitama and Bruhn in *any* Step-3 grievance and he failed to file any final Step-3 grievance alleging that Paleka, Tuitama, and Bruhn retaliated against him. *See* ECF Nos. 214 (Reply), 215 (Joinder).

Espinda, Maesaka-Hirata, and Takenaka assert that Pitts failed to timely exhaust any claims against them specifically, and that his constitutional challenge to COR.15.02., pertaining to indigent inmate writing supplies and postage and seeking injunctive relief, has been granted as to Pitts personally, rendering this claim moot. *See* ECF No. 126 (Joinder).

Pitts disputes Defendants' arguments and asserts that he has grieved all available remedies for each of his claims. Opp'n, ECF No. 212. Pitts also argues that he seeks injunctive relief amending COR.15.02. on behalf of all indigent prisoners. He claims that, although he has received some relief personally regarding the provision of supplies and postage, this relief has "never continued nor did HCF officials and the defendant mailroom staff follow through or adhere to it." ECF NO. 212-3, PageID #1641.

//

//

### 1.   *Legal Mail Claims:  Yoshinaga*

Pitts filed Step-1 grievance #269971 complaining that Yoshinaga opened or directed others to open mail from his attorneys when it lacked a visible attorney bar number.  *See* ECF No. 170-2, PageID #967.  Prison officials denied Step-1 #269971, informed Pitts that mail from an attorney requires the attorney's bar number on the envelope to be considered privileged, and directed him to review COR.15.02.4.0 and .6, which explain which mail is entitled to special handling.  *Id.*

Pitts appealed by filing Step-2 grievance #271538, arguing that John Schum was on record at the prison as his attorney, and therefore, even if Schum's mail lacked a bar number, it should still be handled as privileged, legal mail.  *Id.*, PageID #968.  Pitts further argued that Schum's letter should have been returned to Schum unopened rather than opened and inspected outside of Pitts' presence.  Prison officials denied Step-2 #271538 and again directed Pitts to review COR.15.02.

On February 23, 2015, prison officials denied Pitts' final appeal in Step-3 grievance #271583.  ECF No. 118-6, PageID #712.  They again informed Pitts that COR.15.02 "requires all mail from attorneys to include their bar number . . . [and] it is the responsibility of the inmate to provide the sender with instructions on how to comply with mail regulations."  *Id.*

These grievances plainly alerted prison officials of "the nature of the wrong for which redress is sought.'" *Reyes*, 810 F.3d at 659. Pitts challenged the DPS policy of opening attorney mail when it lacked an attorney bar number and he wanted non-compliant mail returned to the attorney rather than opened outside of his presence. Pitts specifically alleged that Yoshinaga was responsible for this alleged wrong, and that mail from his attorney, John Schum, was at issue. Step-3 #271583 was final more than two years before Pitts filed the original Complaint and it plainly put prison officials and Yoshinaga on notice of Pitts' general claims regarding attorney mail that lacked a bar number, and specific claims against Yoshinaga.[9] Step-3 #271583 exhausted Pitts' challenge to COR.15.02 regarding the handling of legal mail, and to his claim that Yoshinaga personally mishandled his legal mail.

Moreover, Pitts' final Step-3 grievance #273566, which was resolved on October 19, 2015, also shows that prison officials had addressed and resolved Pitts' legal mail claims well before he commenced this suit. *See* ECF No. 118-6, PageID #713. Step-3 #273566 primarily challenged the alleged interference with Pitts' personal mail. *See* ECF No. 118-6, PageID #713. But the response to Step-

---

[9] Step-3 #271583 also put Pitts on notice no later than February 24, 2015, that attorney mail that lacked a bar number would be inspected.

3 #273566, referred to an earlier resolution of Pitts' legal mail complaints, stating, "Capt. Paleka . . . has confirmed that he personally delivers your legal mail to you and you sign for it." *Id.* This establishes that prison officials addressed and tried to resolve Pitts' legal mail claims before October 19, 2015.

Pitts' legal mail claims against Yoshinaga were fully exhausted on February 23, 2015, and her Motion is DENIED regarding those claims.

### 2. Interference With Personal Mail

Yoshinaga and Paleka concede that Pitts exhausted his claims that they interfered with his personal mail. Tuitama and Bruhn assert, however, that Pitts failed to exhaust those claims against them because they are not named in any final Step-3 grievance.

Pitts submitted Step-1 #173131 on September 17, 2013, complaining that HCF mail staff and the GIU were delaying his incoming and outgoing mail. ECF No. 171-2, PageID #997. Prison officials responded that the mail room inspects incoming and outgoing mail daily, and that they had "followed up with GIU and [they] have already received and sent out all your mail." *Id.*

In Step-2 #173135, Pitts asked who constitutes the GIU and complained that he received no notice that his mail was being inspected, as allegedly required by

"COR.15.02.4.0.4c." *Id.* at PageID #998. When Step-2 #173135 went

unanswered, Pitts submitted Step-3 #268023. *Id.*, PageID #1004.

On February 19, 2014, Division Administrator Michael J. Hoffman replied to

Step-3 #260823. He admitted that Step-2 #173135 was never forwarded to the

warden for review and he forwarded it to the warden. Although Hoffman did not

address Pitts' personal mail claims, he told Pitts that this "decision is final and the

ultimate recourse available within the administrative remedy process." *Id.*

On March 4, 2014, then-Warden Espinda responded to Step-2 #173135,

stating that he had "personally checked all facets of the mail screening process and

none of your mail-outs are held up." *Id.* at PageID #1000. Pitts received a copy of

Espinda's and Hoffman's responses on March 5, 2014. *See id.*, PageID #1004.

Pitts did not appeal either response, possibly because (1) Hoffman told him that

Step-3 #260823 was final, or (2) he was satisfied with Espinda's explanation.

These grievances alerted prison officials that Pitts was challenging the alleged

mishandling of his personal mail by HCF mail staff and the GIU, although he did

not know their identities. Defendants Tuitama and Bruhn do not allege that they

were *not* GIU members at that time. Pitts therefore exhausted his personal mail

claims against Yoshinaga, Paleka, Tuitama, and Bruhn no later than March 5, 2014.

*See Reyes*, 810 F.3d at 659 ("The grievance process is only required to 'alert

prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'") (quoting *Jones*, 549 U.S. at 219). Defendants' Motion is DENIED as to Pitts' personal mail claims.

### 3. Challenge to COR.15.02.14.2: Indigent Writing Supplies and Postage

Pitts proffers Step-3 #276854, as proof that he exhausted his claims challenging COR.15.02.14.2. In Step-3 #276854, however, Pitts complained that Keoni Morreira and Janice Villalobos, who are not parties to this action, "racially" discriminated and retaliated against him when they denied him adequate writing supplies under the indigent inmate writing supplies policy. ECF No. 212-10, PageID #1087. Pitts claimed this impeded his ability to "access the courts or communicate with [his] attorney[,] State Ombudsmans [sic] or the State Senator." *Id.* Pitts did not challenge the constitutionality of COR.15.02.14.2; rather, he complained that Morreira and Villalobos denied him writing supplies because of his race. *Id.* Prison officials denied Step 3 #276854 on October 26, 2015.[10] *Id.* While this grievance exhausted Pitts' discrimination claims against Villalobos and Morreira, and may raise questions about COR.15.02.14.2, it did not challenge the

---

[10] Pitts was told the issue had been resolved when he was instructed to submit requests for writing supplies to his case managers. In the alternative, Pitts was told, "you are free to ask your attorney to provide these supplies as you have docketed cases in court and/or you may ask family members to deposit funds so you may purchase . . . supplies." ECF No. 212-10, PageID #1087.

policy itself or allege claims against any named Defendant generally or specifically. Thus, Step 3 #276854 failed to alert prison authorities to the nature of Pitts' constitutional challenge to COR.15.02.14.2 or his claims against Espinda and Maesaka-Hirata in their official capacities.

On April 14, 2017, three weeks *after* Pitts filed the original Complaint, he submitted Step-1 #390908, his first grievance directly alleging that COR.15.02.14.2 was discriminatory to indigent inmates. *See* ECF No. 170-9, PageID #981. This grievance and the related Step-2 grievance #390928 were denied. *Id.*, PageID #983. On or before June 30, 2017, prison officials granted Pitts' Step-3 grievance #390943 and increased the amount of writing supplies that would be provided to him. *See* ECF No. 118-6, PageID #719. These grievances were begun and resolved *after* Pitts filed the original Complaint on March 21, 2017, and mooted his claims for injunctive relief regarding the policy.

Pitts fails to rebut Espinda and Maesaka-Hirata's evidence that his constitutional challenge to COR.15.02.14.2 was unexhausted before he filed this suit. Espinda's and Maesaka-Hirata's Motion is GRANTED and this claim is DISMISSED without prejudice.[11]

---

[11] Pitts alleges in his Opposition, that, although he was granted an exception to COR.15.02.14, unidentified prison staff continued to deny him supplies. Pitts did not allege this in the FAC or SAC,

(continued...)

## 4.    Letter to the Office of the Ombudsman

Pitts alleges that HCF mail staff rejected his sealed letter *to* the Ombudsman

on February 10, 2016, in violation of state law.  *See* SAC, ECF No. 30, PageID

#161.  He submits Step-1 #276891, as proof that he challenged COR.15.02.6 as it

applies to mail to the Ombudsman, and therefore exhausted this claim.  *See* ECF

No. 212-6, #1671.  Step-1 #276891 is unavailing, however, because Pitts filed it on

February 9, 2016, the day *before* mail staff allegedly rejected the letter, it refers to

mail *from* the Ombudsman not *from* Pitts, and it is not a final, Step-3 grievance.

Pitts filed Step-1 #177806, challenging the rejection of his letter *to* the

Ombudsman, on February 10, 2016, the date that it was rejected.  ECF No. 212-6,

PageID #1666.  He directs the court to Step-3 #276854, as proof that he fully

exhausted this claim.  As discussed above, however, Step-3 #276854 involved

---

[11](...continued)
and this claim is *not* reflected in the record.  Between June 30, 2017, and April 4, 2019, Pitts filed
twenty-four documents, none of which allege that he was still being denied adequate writing supplies or
postage.  ECF Nos. 16, 17, 24, 30, 33, 71, 74, 83, 84, 97, 98, 107, 108, 115, 133, 135, 136, 145,
172, 175, 176, 186, 203, 204, and 212.

Pitts was also concurrently litigating *Pitts v. Espinda*, Civ. No. 15-00483 JMS-KJM, in which
he also alleged he was being denied writing supplies.  During a June 16, 2017 status conference in that
case, DPS Litigation Coordinator Shelley Nobriga assured the court on the record that Pitts had been
granted an exception to COR.15.02.  ECF No. 104.  Pitts filed thirty-three documents in Civ. No. 15-
00483 JMS-KJM after this, none of which alleged a denial of writing supplies or postage.  *See* ECF
Nos. 105-07, 113, 115, 117, 119, 120, 130, 165, 175, 176, 181, 182, 187, 188, 201, 207, 213,
216, 217, 237, 238-42, 251, 252, 263, 264, 268, 286.

Pitts' complaint that Morreira and Villalobos denied him writing supplies on the basis of his race, which he alleged impeded his ability to "access the courts or communicate with [his] attorney[,] State Ombudsmans [sic] or the State Senator." ECF No. 212-10, PageID #1087. It was not a Step-2 grievance (regarding Step-1 #177806), and could not have alerted prison authorities that any named Defendant rejected Pitts' letter to the Ombudsman on February 10, 2016.

After a comprehensive search of the 344 pages in the record of Pitts' grievances, the court has been unable to locate any other grievance regarding this claim, and Pitts points to none. Pitts fails to rebut Defendants' evidence that he failed to exhaust available remedies regarding this claim. Defendants' Motion is GRANTED as to Pitts' rejected letter to the Ombudsman, and this claim is DISMISSED without prejudice.

### 5. *Retaliation: Takenaka*

Pitts alleges Takenaka fabricated false charges against him, that resulted in a disciplinary proceeding, in retaliation for Pitts' filing a state tort action against Takenaka. Pitts was found not guilty at the initial prison disciplinary hearing on these charges. Pitts received notice on January 21, 2016, however, that a second hearing was scheduled for the next day, based on new evidence supporting Takenaka's charges. ECF No. 212-5, PageID #1652. On January 22, 2016, Pitts

submitted Step-1 #176274, in which he explicitly alleged that Takenaka's false report *and* the second hearing were retaliatory. *Id.*, PageID #1649. On January 24, 2016, Warden Sequeira replied that the evidence warranted a second hearing and Pitts would have an opportunity to defend himself at the second hearing. *Id.*, PageID #1647.

On February 2, 2016, after Pitts was found guilty at the second hearing, he immediately filed Step-2 #276558, again asserting Takenaka's charges *and* the second hearing were retaliatory. *Id.*, PageID #1651. Step-2 #276558 was denied on May 2, 2018.

On May 6, 2016, Pitts filed Step-3 #169020, primarily challenging the second hearing's procedures, and stating, "Gavin [Takenaka] charge on Nov. 10, 15, wrote me up Dec. 14, 15." *Id.*, PageID #1655. Step-3 #169020 was denied on June 17, 2016, before Pitts brought this claim in the original Complaint. *See id.* This series of grievances plainly alerted prison officials that Pitts was challenging Takenaka's alleged retaliatory actions, which resulted in his disciplinary hearing and sanctions. Pitts rebuts Takenaka's argument that this claim is unexhausted. The Motion is DENIED as it relates to Pitts' retaliation claim against Takenaka.

//

//

### 6.     Retaliation:  Yoshinaga

Pitts alleges Yoshinaga retaliated against him *before* he filed the original

Complaint, and again, days before he filed the SAC.

### a.     Claims in the Original Complaint

In Step-3 #177896, submitted on April 27, 2016, Pitts alleged that Yoshinaga

was "obstructing, hindering, and violating" his right to communicate by returning

his incoming mail package (a catalog) and photographs to the senders.  He called

this "clear retaliation."  ECF No. 118-6, PageID #718.  This final appeal was

rejected as "moot" because Pitts had been transferred to the Oahu Community

Correctional Center on May 11, 2016.  *Id.*  This Step-3 resolution exhausted Pitts'

retaliation claim against Yoshinaga, even though it did not address the merits of his

claim, because he had no further available remedy.[12]

Moreover, in Step-3 #273566, denied October 19, 2015, Pitts alleged that

Yoshinaga had "been withholding and tampering with my mail for years because the

institution wants to retaliate against me because of my grievances."  ECF No. 118-

6, PageID #713.  This challenge to her alleged retaliation cannot be plainer.

---

[12] It is troubling that prison officials rejected this Step-3 grievance because Pitts was transferred to another DPS facility.  Transfers between prisons and jails is common, and as seen here, often the inmate is transferred back to the original prison where his issue may be repeated.  This practice is confusing, thwarts a meaningful resolution of a claim, and impedes the PLRA's goal of reducing prisoner suits by allowing prison officials to address an issue before a lawsuit is filed.

Step-3 grievances #177896 and #273566 clearly alerted prison officials to Pitts' retaliation claims against Yoshinaga that allegedly occurred before he filed the original Complaint. These claims are fully exhausted and the Motion is DENIED as it relates to these claims.

b.    *New Retaliation Claims Alleged in the SAC*

Pitts alleges Yoshinaga interfered with his personal mail on December 7 and 8, 2017, just days before he submitted the SAC on December 19, 2017. Pitts submitted Step-1 grievances #397654 and #397655 regarding these claims. *See* ECF Nos. 30-2, 30-3. Prison officials rejected these grievances on December 7 and 13, 2017, respectively. The response to Step-1 #397654 was, "You state you have an open lawsuit against the mailroom, therefore you need to address all concerns related to the lawsuit with the courts." ECF No. 30-3, PageID #179.

Similarly, the response to #397655 stated:

> You state you have an active lawsuit on this issue. The grievance process can't help you. Address your concerts to the court. Capt. Paleka inform[s] this office that he has spoken with you concerning [unreadable] and the issue has been settled.

ECF No. 30-2, PageID #178.

Prison officials told Pitts in no uncertain terms that, because he was pursuing relief in court on similar claims, there were no administrative remedies available to

him for these claims. Again, this is troubling because these were *new* claims that Pitts had a right to raise in an amended pleading and was required to exhaust before he filed an amended pleading. Prison officials cannot reject an inmate's grievances because he filed suit, and then seek summary judgment for failure to exhaust the very grievances that they rejected. Pitts rebuts Defendants' arguments regarding his later retaliation claims against Yoshinaga, and the Motion is DENIED as to those claims.

### 7.    *Retaliation: Paleka, Tuitama , and Bruhn*

It is unclear whether Pitts even alleges a colorable retaliation claim against Paleka, Tuitama, and Bruhn in the SAC. He complains that, per prison policy, they inspected his incoming and outgoing personal mail based on his gang affiliation. But Pitts makes no clear statement or provides any facts in the SAC to support a retaliation claim against Paleka, Tuitama, and Bruhn. Pitts' hyperbolic allegation that "retaliation is automatic," is specifically addressed towards Yoshinaga and mail room staff and is too conclusory to suffice as a retaliation claim against these GIU officers who were following DPS policy. SAC, ECF No. 30, PageID #171.

Nonetheless, the court has searched the record and found no grievances, Step-3 or earlier, that allege a comprehensible retaliation claim against Paleka, Tuitama, and Bruhn. Pitts therefore fails to rebut Defendants' Motion regarding

these claims. Paleka's, Tuitama's, and Bruhn's Motion is GRANTED and Pitts' retaliation claims against them are DISMISSED without prejudice.

### 8. *Retaliation: Espinda*

Pitts alleges that Espinda's refusal to transfer him from HCF "only can be interpreted as deliberate retaliation for [Pitts'] lawsuits against DPS." SAC, ECF No. 30, PageID #168. This claim is the barest possible allegation of retaliation and would not likely withstand examination on its merits. Regardless, the court has searched the record and agrees with Espinda that Pitts did not exhaust any retaliation claim against him before bringing this suit. The Motion is GRANTED as to Pitts' claim of retaliation against Espinda, and this claim is DISMISSED without prejudice.

## IV. <u>CONCLUSION</u>

Defendants Yoshinaga, Paleka, Tuitama, and Bruhn's Motions for Summary Judgment and Defendants Espinda, Maesaka-Hirata, and Takenaka's Motion for Substantive Joinder are GRANTED in part and DENIED in part.

Specifically, Pitts exhausted his claims regarding Yoshinaga's handling of mail from his attorneys; Yoshinaga's, Paleka's, Tuitama's, and Bruhn's handling of his incoming and outgoing personal mail; and Yoshinaga's and Takenaka's alleged retaliation against him. Defendants' Motions are DENIED as to these claims.

Pitts fails to rebut Defendants' evidence that he failed to fully or timely exhaust his claims regarding Espinda's and Maesaka-Hirata's implementation of COR.15.02.14.2; the rejection of a letter to the Ombudsman; and Paleka's, Tuitama's, Bruhn's, and Espinda's alleged retaliation. Defendants' Motions are GRANTED as to these claims, which are DISMISSED without prejudice.

Finally, all other arguments of both parties are DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 8, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge